**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 19-cv-1748-WJM-STV

RAYMOND ROBLES,

     Plaintiff,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY,

     Defendant.

---

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
DENYING AS MOOT PLAINTIFF'S MOTION TO STRIKE**

---

Plaintiff Raymond Robles brings this insurance action against Defendant American Family Mutual Insurance Company ("American Family"), arguing that American Family breached its insurance contract with Robles following a single-car automobile accident which resulted in the death of Robles's five-year-old son and has denied and/or delayed payments of uninsured motorist benefits to Robles in bad faith. (ECF No. 5 at 3–5.)

Currently before the Court is American Family's Motion for Summary Judgment, filed on February 24, 2020. (ECF No. 37.)

Also before the Court is Robles's Motion to Strike New Arguments and Evidence In Defendant's Reply Brief In Support of Summary Judgment, and For Leave to File Sur-Reply ("Motion to Strike"), filed on June 11, 2020. (ECF No. 70.)

For the reasons explained below, the Motion for Summary Judgment is denied, and the Motion to Strike is denied as moot.

## I.  STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986).  A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim.  *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001).  An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial.  *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## II.  BACKGROUND

### A.    Factual Allegations[1]

American Family issued an uninsured or underinsured motorist insurance policy (the "Policy") to Robles, which provides uninsured motorist coverage with a per person

---

[1]  The following factual summary is based on the parties' briefs on the Motion for Summary Judgment and documents submitted in support thereof.  These facts are undisputed unless attributed to a party or source.  All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

limit of $100,000.  (ECF No. 37 ¶ 1.)  While the Policy was in effect, Robles's five-year-old son, T.R.,[2] tragically died in a car accident on August 16, 2018.  (*Id.* ¶¶ 1–2, 5.)  The owner or operator of the vehicle involved in T.R.'s accident did not have liability insurance at the time.  (*Id.* ¶ 6.)

Following the accident, Robles made a claim on the Policy for uninsured motor benefits for his son, who was an Insured under the Policy.  (*Id.* ¶¶ 7, 9.)  To demonstrate that he is entitled to uninsured motorist benefits, Robles provided American Family with T.R.'s death certificate and a custody agreement, which reflected that Robles shared custody of his son with T.R.'s mother, Annaliese Borgman.  (ECF No. 37 ¶¶ 3–4, 9; ECF No. 37-3.)

American Family argues that Borgman is also an Insured and potential claimant under the Policy.[3]  (ECF No. 37 ¶ 8; ECF No. 37-2 at § B.1.)  On March 8, 2019, American Family sent an e-mail to Robles's counsel, offering to write a single $100,000 check to both Robles and Borgman.  (ECF No. 37 ¶ 10; ECF No. 37-4.)  To date, however, Borgman has not contacted American Family or made a claim under the Policy.  (ECF No. 65 at 15–16 ¶¶ 19–20.)

On March 21, 2019, Robles's counsel sent a letter to American Family asserting that "Ms. Bor[g]man is not an [I]nsured under the terms of the subject American Family

---

[2]  To preserve the deceased minor's privacy, the Court will refer to the minor using his initials.

[3]  In the claim notes created prior to this action, American Family referred to Borgman as a "claimant."  (ECF No. 65 at 13 ¶ 3; ECF No. 65-4 at 2 ("Our position is that [T.R.'s] father, Raymond Robles and [T.R.'s] mother, Annaliese Borgman are both claimants in this matter. We will issue a settlement payment with both parents' names on the check.").)  American Family contends that "[t]he term insured and claimant are synonymous in the context of the communications in this case."  (ECF No. 69 at 6 ¶¶ 1, 3.)

3

policy.  Accordingly, she has no contractual right to receive any portion of the $100,000.00 uninsured motorist benefits and American Family cannot insist that Ms. Robles share these insurance benefits with Ms. Borgman."  (ECF No. 37 ¶ 11; ECF No. 37-5 at 1.)

Nonetheless, on March 26, 2019, American Family issued a check for the $100,000 uninsured motorist policy limit, payable to Robles and Borgman.  (ECF No. 37 ¶ 12.)  On that day, American Family informed Robles's attorney that: (1) T.R. was a minor at the time of his accident; and (2) it was American Family's position that because Robles and Borgman "are both claimants in this matter," it would "issue a settlement payment with both parents' names on the check."  (ECF No. 37 ¶ 12; ECF No. 37-6 at 2.)

### B.    Procedural History

 On May 16, 2019, Robles sued American Family in Denver District Court.[4]  (ECF Nos. 1, 5.)  The Complaint alleges that American Family: (1) breached its contract with Robles by not paying him the amounts due under the uninsured motorist coverage (ECF No. 5 at 3–4); (2) denied and/or delayed payments of uninsured motorist benefits to Robles "by requiring a condition which is in contravention of black letter Colorado law as a condition of payment" in violation of Colo. Rev. Stat. §§ 10-3-1115 and 10–3-1116 (*id.* at 4); and (3) breached its duties to Robles and acted in bad faith (*id.* at 4–5).

American Family filed the Motion for Summary Judgment on February 24, 2020. (ECF No. 37.)  Robles responded on May 14, 2020 (ECF No. 65), and American Family

---

[4]  American Family removed this action to federal court on June 17, 2019.  (ECF No. 1.)

replied on June 4, 2020 (ECF No. 69).

On June 11, 2020, Robles filed the Motion to Strike.  (ECF No. 70.)  American Family responded on July 2, 2020 (ECF No. 71), and Robles replied on July 16, 2020 (ECF No. 72).

### III.  ANALYSIS

### A.  Whether Borgman Is an Insured Person Under the Policy

As an initial matter, the Court must determine whether Borgman is an Insured under the Policy.  American Family contends that Borgman is an Insured (ECF No. 37 at 5), which Robles disputes (ECF No. 65 at 8–9).

In a contract case, a motion for summary judgment allows for contract interpretation as a matter of law.  *Lake Durango Water Co., Inc. v. Pub. Utils. Comm'n of Colo.*, 67 P.3d 12, 20 (Colo. 2003) (en banc).  Under Colorado law, courts construe insurance policies "using general principles of contract interpretation."  *Greystone Constr., Inc. v. Nat'l Fire & Marine Ins. Co.*, 661 F.3d 1272, 1283 (10th Cir. 2011). Therefore, absent an ambiguity, a policy's language is construed according to its plain meaning.  *Id*.  However, in recognition of the unique relationship between insurer and insured, courts "construe ambiguous provisions against the insurer and in favor of providing coverage to the insured."  *Id*. at 1284.

To determine whether a provision is ambiguous, "the instrument's language must be examined and construed in harmony with the plain and generally accepted meaning of the words employed, and reference must be made to all the provisions of the agreement."  *Radiology Prof'l Corp. v. Trinidad Area Health Ass'n, Inc.*, 577 P.2d 748, 750 (Colo. 1978) (en banc).  Courts should avoid "strained constructions" in favor of

5

"common constructions," and technical and legal definitions should also be avoided. *Dish Network Corp. v. Arch Specialty Ins. Co.*, 989 F. Supp. 2d 1137, 1144 (D. Colo. 2013). "In other words, the plain meaning of the words should be employed in a lay manner consistent with what would be understood by a person of ordinary intelligence." *Id.*

Under the terms of the Policy, an "Insured" is defined as:

> a. **you** or a **relative**.
>
> . . .
>
> c. anyone, other than a person or organization claiming by right of assignment or subrogation, who is entitled to recover damages against the owner or operator of **an uninsured motor vehicle** or **underinsured motor vehicle** because of **bodily injury** to any person under [the above definition].

(*Id.* ¶ 7; ECF No. 37-2 at § B.1.)

According to the Policy, a determination about whether Borgman is an Insured depends on whether she is a person "who is entitled to recover damages against the owner or operator of an uninsured motor vehicle . . . because of bodily injury to any [other Insured]" under the Policy. (ECF No. 37-2 at § B.1.c.) In other words, if Borgman is entitled to recover damages from the owner or operator of the uninsured motor vehicle responsible for T.R.'s accident, then she is also an Insured under the Policy.

Under Colorado's Wrongful Death Statute, Colo. Rev. Stat. § 13-21-202,

> [w]hen the death of a person is caused by a wrongful act, neglect, or default of another, and the act, neglect, or default is such as would, if the death had not ensued, have entitled the party to maintain an action and recover damages in respect thereof, then . . . the person who . . . would have

> been liable, if the death had not ensued, shall be liable in an
> action for damages notwithstanding the death of the party
> injured.

*See Steedle v. Sereff*, 167 P.3d 135, 136 (Colo. 2007) (en banc) (recognizing that Colo.

Rev. Stat. § 13-21-202 "allows a person's heirs to recover damages for the wrongful

death of that person").  When the "deceased is an unmarried minor without decedents,"

then a wrongful death action may be brought

> (c)(I) . . . by the father or mother who may join in the suit.
> Except as provided in subparagraphs (II) and (III) of this
> paragraph (c), the father and mother shall have an equal
> interest in the judgment, or if either of them is dead, then the
> surviving parent shall have an exclusive interest in the
> judgment.
>
> (c)(II) For cases in which the father and mother are divorced,
> separated, or living apart, a motion may be filed by either the
> father or the mother prior to trial requesting the court to
> apportion fairly any judgment awarded in the case.  Where
> such a motion is filed, the court shall conduct a
> post-judgment hearing at which the father and the mother
> shall have the opportunity to be heard and to produce
> evidence regarding each parent's relationship with the
> deceased child.
>
> (c)(III) On conclusion of the post-judgment hearing
> conducted pursuant to subparagraph (II) of this paragraph
> (c), the court shall fairly determine the percentage of the
> judgment to be awarded to each parent. . . .

Colo. Rev. Stat. § 13-21-201(1)(c).  This statute explicitly allows Borgman, as T.R.'s

mother, to bring a wrongful death action to recover damages against the owner or

operator of the uninsured motor vehicle responsible for his death.  (*Id.*)

Robles argues that American Family has nonetheless failed to establish that

Borgman was an Insured because it has not proven that Borgman was "legally entitled

to recover" damages as a result of T.R.'s accident.  (ECF No. 65 at 8–9.)  According to

Robles, because the wrongful death statute allows either a father or mother to make a claim, Borgman must "affirmatively join in any suit for determination of damages in order to be entitled to the same." (*Id.* at 9.) In such a suit, a court would be required to analyze Borgman's relationship with her child to determine whether she is entitled to recover damages resulting from his death. (*Id.*) The Court disagrees.

Robles's interpretation of the Section B.1.c of the Policy would require Borgman to litigate an entire wrongful death lawsuit to judgment to establish that she (1) would recover damages from the owner or operator of the uninsured motor vehicle, and (2) had the requisite relationship with her son to qualify as an Insured under the Policy. This strained interpretation of the Policy is inconsistent with Colorado law. *See Engineered Data Prods., Inc. v. Nova Office Furniture, Inc.*, 849 F. Supp. 1412, 1417 (D. Colo. 1994) ("Construction of a contract should be reasonable and not lead to an absurd result."). After all, the wrongful death statute presumes that the father and mother will have an equal interest in any judgment but states that a parent *may* file a motion asking a court to apportion the judgment between the parents. Colo. Rev. Stat. § 13-21-201(1)(c)(I)–(II). Moreover, the Supreme Court of Colorado has concluded that although the wrongful death statute "permits the father, and . . . the mother, to sue alone, it does not deprive the parent not joined of that equal interest in the judgment." *Pierce v. Conners*, 20 Colo. 178, 184 (Colo. 1894).[5] Accordingly, the Court rejects

---

[5] In *Pierce*, the Supreme Court of Colorado interpreted Gen. Laws 1877, p. 343, a prior iteration of the current wrongful death statute. *See Pierce*, 20 Colo. at 183. However, the relevant statutory language is consistent with the modern statute. *See id.* (providing that if the deceased be a minor, or unmarried, the suit is to be brought "by the father and mother who may join in the suit and each shall have an equal interest in the judgment; or if either of them be dead then by the survivor.").

8

Robles's proposed interpretation of the Policy definition for an Insured. [6]

Instead, the Court finds that the plain language of the Policy demonstrates that Borgman is an Insured.[7]  After all, as T.R.'s mother, Borgman is entitled to bring a wrongful death action to recover damages against the owner or operator of the uninsured motor vehicle responsible for her son's death.  *See Wheeler v. Allstate Ins. Co.*, 687 F. App'x 757, 764 (10th Cir. 2017) ("Courts must . . . enforce an unambiguous contract and may not rewrite an insurance contract if the language is clear" (internal quotation marks omitted)); *McCord v. Affinity Ins. Grp., Inc.*, 13 P.3d 1224, 1228 (Colo. App. 2000) (finding "the persons enumerated in the wrongful death statutes are persons entitled to collect damages as a result of a death caused by an uninsured . . . motorist").

## B.    Breach of Contract Claim

To prevail on his breach of contract claim, Robles must show that (1) a contract existed; (2) Robles performed his obligations under the contract or was excused from doing so; (3) American Family failed to perform its obligations under the contract; and (4) as a result, Robles sustained damages.  *Western Distributing Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992) (en banc).

---

[6]  Robles also argues that American Family must "put forth admissible facts that [Borgman] is even still alive, or was when it issued the 'un-cashable' check at issue" to establish Borgman is an Insured.  (ECF No. 65 at 3.)  The Court again disagrees.  The Policy definition for an Insured does not add this condition to its plain text.  At any rate, because neither party has provided any evidence suggesting that Borgman is not alive, this argument is little more than a red herring.

[7]  Robles points out that American Family originally admitted in its Answer that Borgman was not an Insured.  (ECF No. 19 ¶ 16; ECF No. 65 at 30–31.)  However, American Family amended its Answer to clarify that Borgman was not a "named insured" under the Policy.  (ECF No. 31 ¶ 16.)  This does not preclude a finding that Borgman was an unnamed Insured under Section B.1.c of the Policy because contract interpretation is a question of law for a court to determine.  *Lake Durango Water Co., Inc.*, 67 P.3d at 20.

American Family admits that it has a duty to issue payment without imposing unreasonable conditions on an insured in order to accept the payment.  (ECF No. 65 at 15 ¶ 17; ECF No. 69 at 7 ¶ 17.)  *See Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995) (en banc) (recognizing that "[t]he duty of good faith and fair dealing applies when one party has discretionary authority to determine certain terms of the contract, such as quantity, price, or time").  It argues, however, that "[i]n light of [Borgman's] status an 'insured person' under the [Policy], [Robles] cannot, as a matter of law, meet his burden of proving American Family failed to perform its obligations under the policy."  (ECF No. 37 at 8.)  They contend that because Borgman is an Insured, "it is axiomatic that she is entitled to receive [ ] benefits under the [P]olicy and is a required payee on the [uninsured motorist] check issued by American Family."  (*Id.*)

The Court finds that American Family has not shown that it is entitled to judgment as a matter of law on the breach of contract claim.  American Family has not identified any provision of the Policy requiring it to issue payment to *every* Insured who has a potential claim to benefits under the Policy.  (ECF No. 65 at 15 ¶ 18; ECF No. 69 at 8 ¶ 18.)  Nor has American Family cited any statute or case law indicating that it was required to include Borgman as a payee on the benefits check, particularly in light of the fact that Borgman has neither contacted American Family nor made her own claim under the Policy.  (ECF No. 65 at 15–16 ¶¶ 19–20; ECF No. 69 at 8 ¶¶ 19–20.)

The Court understands American Family's concern that Borgman may later assert a claim under the Policy for benefits.  However, American Family has not established that it was necessary or reasonable to issue a single check payable to both Borgman and Robles.  To the contrary, it admits that it could have "issued a check to an

insured subject to an agreement that the insured indemnify American Family from any claims to such funds by another party in the future."  (ECF No. 65 at 16 ¶¶ 26–27; ECF No. 69 at 8 ¶¶ 26–27.)  However, American Family did not offer Robles this option prior to the initiation of the lawsuit.  (ECF No. 65 at 17 ¶ 28; ECF No. 69 at 8 ¶ 28.)

The Court finds that a reasonable trier of fact could conclude that American Family's refusal to issue payment in any manner other than by sending a check payable to both Robles and Borgman was an unreasonable condition that breached the Policy. Robles cannot cash the settlement check without receiving Borgman's endorsement. (*See* ECF No. 69 at 8m  ¶ 25 (American Family recognizes that Robles's check requires endorsement by both parties).)  Robles contends that he has not had contact with Borgman following T.R.'s death, does not know where she is located, and does not believe she would be cooperative even if he could contact her.[8]  (ECF No. 65-9 at 2.) He claims that he is therefore unable to cash the benefits check.  (*Id.*)

Because there are genuine disputes of material fact as to whether American Family imposed unreasonable conditions on Robles to accept payment under the Policy, the Court denies American Family's request for summary judgment as to the breach of contract claim.

**C.    Unreasonably Delay of Payment and Bad Faith Claims**

Robles has also asserted and common law and statutory claims that American Family acted in bad faith.  (ECF No. 5 at 4–5.)

To establish a common law bad faith claim under Colorado law, an insured must

---

[8]  American Family admits that the custody agreement it received from Robles "describe[s] a past contentious relationship."  (ECF No. 69 at 6 ¶ 9.)

establish "proof of unreasonable conduct and knowledge that the conduct is unreasonable or a reckless disregard of the fact that the conduct is unreasonable." *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1276 (Colo. 1985) (en banc).

Likewise, under Colo. Rev. Stat. § 10-3-1115(a), "[a] person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant."  An insurer breaches its statutory duty if there "was no reasonable basis to delay or deny the claim for benefits." *Kisselman v. Am. Family Mut. Ins. Co.*, 292 P.3d 964, 974 (Colo. App. 2011); Colo. Rev. Stat. § 10-3-1115(2) (stating "an insurer's delay . . . was unreasonable if the insurer delayed . . . authorizing payment of a covered benefit without a reasonable basis for that action.").  Colo. Rev. Stat. § 10-3-1116, in turn, creates a private right of action for certain remedies for violations of Colo. Rev. Stat. § 10-3-1115, and authorizes damages of two times the covered benefit plus attorney's fees and court costs.

In assessing a bad faith claim, "the reasonableness of an insurer's conduct is measured objectively based on industry standards in both the first-party and third-party context." *Am. Family Mut. Ins. Co. v. Allen*, 102 P.3d 333, 343 (Colo. 2004) (en banc). "What constitutes reasonableness under the circumstances is ordinarily a question of fact for the jury.  However, in appropriate circumstances, as when there are no genuine issues of material fact, reasonableness may be decided as a matter of law." *Zolman v.*

*Pinnacol Assur.*, 261 P.3d 490, 497 (Colo. App. 2011).[9]

American Family argues that it is entitled to summary judgment on both claims because it did not deny or delay its payment of benefits to Robles.  (ECF No. 37 at 10.) It claims that its determination that Borgman was an Insured under the Policy was based on a good faith, reasonable interpretation of the Policy and Colorado law and that Robles's apparent disagreement over the proper interpretation of the Policy does not equate to a failure to deal in good faith.  (*Id.* at 10–11.)

American Family's argument misses the mark.  As explained above in Part III.B., even if Borgman were an Insured under the Policy, it does not *necessarily* follow that American Family acted reasonably by issuing a single check payable both Robles and Borgman.  American Family has not provided evidence or law suggesting that *that* decision comported with industry standards or was otherwise reasonable.[10]  Moreover, by issuing Robles a check it has ample reason to believe he is unable to cash on his own, a reasonable factfinder could conclude that American Family has constructively

---

[9]  American Family contends that when the basis for denying or delaying payment of insurance benefits is "an insurer's interpretation of the applicable law, the application of the standards for bad faith and willful and wanton breach of contract is a matter of law for the court, not a question of fact for the jury."  *Fincher v. Prudential Prop. & Cas. Ins. Co.*, 374 F. App'x 833, 844 (10th Cir. 2010).  Because American Family has not cited any applicable law supporting its argument that it was reasonable to issue a check payable to both Robles and Borgman even though Borgman has not made a claim under the Policy, the question of whether American Family acted reasonably remains a question of fact for the jury.

[10]  In its reply, American Family argues that "[Robles] offers no evidence that issuing the joint . . . check was inconsistent with [American Family's] policies and practices or unreasonable.  Colorado law does not hold that any multiparty check issued by an insurer is, *per se*, unreasonable."  (ECF No. 69 at 16–17.)  As movant, it is American Family's burden—not Robles's—to establish in its Motion for Summary Judgment that there are no genuine disputes as to any material fact.  Accordingly, this argument is without merit.

denied or delayed benefits to Robles.[11]  *See Dale v. Guar. Nat'l Ins. Co.*, 948 P.2d 545, 554 (Colo. 1997) (holding material issue of fact as to whether nine-party check issued to insured  constituted bad faith precluded grant of summary judgment).

American Family emphasizes that Robles did not raise his concerns about cashing the check prior to filing the lawsuit.  (ECF No. 69 at 1, 15.)  However, Colorado law permits the introduction of post-litigation conduct as a basis for a bad faith claim. *See Dale*, 948 P.2d at 552 (stating that the common law tort claim of bad faith "included the entire course of the insurer's conduct with respect to Dale's benefits until the time of trial.").  Even if American Family were not aware of the logistical difficulties associated with issuing a check payable to both Robles and Borgman before Robles commenced this litigation, it is certainly aware of these problems now.

Accordingly, the Court denies American Family's request for summary judgment as to common law bad faith claim and statutory claims pursuant to Colo. Rev. Stat. §§ 10-3-1115 & 10-3-1116.

## D.    Request for Attorney's Fees

American Family requests attorney's fees pursuant to Colo. Rev. Stat. § 13-17-102(4), which allows a court to assess attorneys fees if it finds that a party brought an action "lack[ing] substantial justification."  *See Munoz v. Measner*, 247 P.3d 1031, 1034

---

[11]  In its reply, American Family argues—for the first time—that Robles breached his duty to cooperate under the Policy by not informing American Family that he was unable to contact Borgman or that she would not cooperate.  (ECF No. 69 at 2–3.)  Because this argument was raised for the first time on reply, the Court will not consider it.  *United States v. Harrell*, 642 F.3d 907, 918 (10th Cir. 2011) ("[A]rguments raised for the first time in a reply brief are generally deemed waived.").  Accordingly, the Court denies as moot Robles's Motion to Strike.  (ECF No. 70.)

14

(Colo. 2011) (en banc) (recognizing that an action lacks substantial justification where it was "substantially frivolous, substantially groundless, or substantially vexatious").  An award of attorney's fees is committed to the discretion of the trial court.  *See City of Holyoke v. Schlachter Farms R.L.L.P.*, 22 P.3d 960, 963 (Colo. App. 2001) ("Ultimately, whether to award attorney fees under § 13-17-101, et seq. is a matter committed to the discretion of the trial court.").

The Court finds that granting American Family's request for attorney's fees would be wholly inappropriate at this stage of the litigation, not the least because its instant Motion is being denied.  As explained above, American Family has failed to establish that it is entitled to judgment as a matter of law on any of Robles's claims.  There are substantial genuine issues of material fact which remain to be determined by a jury at trial.  Accordingly, American Family's request for attorney's fees is denied.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS that:

1. American Family's Motion for Summary Judgment (ECF No. 37) is DENIED;

2. Robles's Motion to Strike (ECF No. 70) is DENIED AS MOOT; and

3. This matter REMAINS SET for a Final Trial Preparation Conference on **December 21, 2020, at 11:00 AM**, and a 5-day jury trial commencing on **January 4, 2021 at 8:30 AM**, both in Courtroom A801.

Dated this 15th day of September, 2020.

BY THE COURT:

William J. Martinez
United States District Judge